<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| EDWARD W. PRICE, VERONICA PRICE, TERESA G. AMBROSE, JOHN K. BALTZ, MICHAEL CLAY, STEPHANIE FALDETTA, ANDREW LEE, JAMES J. LUSHOK, JR., JAMES McCLORY, LISA PASTORE, DAVID SMITH, MARGARET WESCOTT, MICHAEL YOUNG,<br><br>Plaintiffs,<br><br>v.<br><br>GOVERNOR JON S. CORZINE, individually and as GOVERNOR OF THE STATE OF NEW JERSEY; STATE OF NEW JERSEY; NEW JERSEY STATE ETHICS COMMISSION; and RITA L. STRMENSKY, individually and as EXECUTIVE DIRECTOR OF STATE ETHICS COMMISSION,<br><br>Defendants. | Civ. No. 06-1520 (GEB)<br><br>**OPINION** |

**<u>BROWN, Chief Judge</u>**

　　This matter comes before the Court upon Plaintiffs' motion for a preliminary injunction. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331. The Court, having considered the parties' submissions, as well as oral argument heard on April 18, 2006, and for the reasons set forth below, will deny Plaintiffs' motion.

**I.　　BACKGROUND**

　　Plaintiffs are employees of the New Jersey Casino Control Commission, or spouses of such employees. (Compl. ¶3.) Defendant Jon Corzine is the Governor of the State of New Jersey, and is being sued in his individual and official capacities. (Compl. ¶4.) Defendant Rita Strmensky is the Executive Director of the New Jersey State Ethics Commission, and is also

1

being sued in both her individual and official capacities.  (Compl. ¶7.)  Plaintiffs are also suing the New Jersey State Ethics Commission ("Ethics Commission") and the State of New Jersey.  (Compl. ¶¶5-6.)

The New Jersey Casino Control Commission ("CCC") was created pursuant to the New Jersey Casino Control Act, N.J. Stat. Ann. 5:12-1, *et seq*.  The Casino Control Act requires that employees of the CCC file an annual Financial Disclosure Statement ("FDS") with the Ethics Commission.  N.J. Stat. Ann. 5:12-58(e).  The FDS forms require employees to list "all assets and liabilities, property and business interests, and sources of income of said employee or agent and his spouse." *Id.*  Employees are required to complete such statements "under oath" and to file them "at the time of employment and annually thereafter." *Id.*  Plaintiffs do not challenge the required FDS submissions, nor the prevailing practice of making that information available to the public.  (*See* Compl. ¶9.)

Instead, Plaintiffs challenge a recent amendment to the Conflicts of Interest Law that requires the online publication of the FDS forms.  The new rule, which was enacted on or about January 17, 2006 and became effective on March 15, 2006, provides that "[f]inancial disclosure statements required to be submitted to the [Ethics Commission] by law, regulation or executive order shall be made available to the public, promptly after receipt, on the Internet site of the [Ethics Commission], commencing with submissions for 2005."  N.J. Stat. Ann. 52:13D-21(n).  In an executive order issued on January 17, 2006, Governor Corzine ordered that "the [Ethics Commission] shall file and maintain a copy of [each submitted FDS form] for public inspection and copying in accordance with the procedures set forth in N.J.S.A. 47:1A-1 *et seq.* and shall post the statement on its website pursuant to N.J.S.A. 52:13D-21(n)[.]"  (Wood Decl. Ex. A at 4.)

Pursuant to the new online publication rule and Governor Corzine's executive order, the Ethics Commission began posting FDS information on its website in the form of a searchable database.  (*See* Compl. ¶14.)  The website stated that the FDS forms "have been edited, to the extent possible, to remove personal information that is not releasable to the public and is not

required" by executive order. (Strmensky Decl. ¶6, Ex. A.) As a general matter, Ethics Commission personnel review all FDS information prior to their online publication in order to redact certain personal identifying information, including social security numbers, account numbers and home addresses. (*Id.* ¶7.)

On March 31, 2006, Plaintiffs filed the complaint in this case. Plaintiffs seek relief pursuant to 42 U.S.C. § 1983, alleging that the Ethics Commission's online publication of their FDS information violates a number of their federal constitutional rights. On the same date, Plaintiffs filed a motion seeking a temporary restraining order and preliminary injunction. The Court conducted a telephone conference with the parties on April 3, 2006, and during the conference, Defendants informed the Court that they would refrain from posting FDS information concerning the named Plaintiffs for a period of sixty (60) days, thereby making Plaintiffs' motion for a temporary restraining order moot. On April 18, 2006, the Court heard oral argument concerning Plaintiffs' motion for a preliminary injunction. During oral argument, the parties agreed that they do not dispute any facts pertaining to the instant motion, and that no evidentiary hearing would be required. Briefing having been completed by the parties, and oral argument having been heard, the Court will now decide Plaintiffs' motion for a preliminary injunction.

II.   **DISCUSSION**

    A.   **Standard for Deciding Whether to Issue a Preliminary Injunction**

In deciding whether to issue a preliminary injunction, a court must consider: (1) the likelihood that the moving party will succeed on the merits; (2) the extent to which the moving party will suffer irreparable harm without injunctive relief; (3) the extent to which the nonmoving party will suffer irreparable harm if the injunction is issued; and (4) the public interest. *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharmaceuticals Co.*, 290 F.3d 578, 586 (3d Cir. 2002); *Opticians Ass'n of Am. v. Independent*

*Opticians of Am.*, 920 F.2d 187, 191-92 (3d Cir. 1990).  The court should grant the preliminary injunction only if there is evidence sufficient to show that all four factors favor preliminary injunction.  *Am. Tel. & Tel. Co. v. Winback and Conserve Program, Inc.*, 42 F.3d 1421, 1427 (3d Cir. 1994), *cert. denied*, 514 U.S. 1103 (1995).  The decision to grant or deny the motion lies within "the sound discretion of the district judge, who must balance all of these factors in making a decision."  *Kershner v. Mazurkiewicz*, 670 F.2d 440, 443 (3d Cir. 1982).  Injunctive relief is an extraordinary remedy that should be granted only in limited circumstances.  *Frank's GMC Truck Center, Inc. v. Gen. Motors Corp.*, 847 F.2d 100, 102 (3d Cir. 1988).  This is especially the case for preliminary injunctions because at that early stage of the litigation, the factual record has not yet been fully developed.  *Winback and Conserve Program, Inc.*, 42 F.3d at 1427.

              **1.**      **Likelihood That Plaintiffs Will Succeed on the Merits**

Plaintiffs challenge only the online publication of their FDS information.  They do not challenge the State's requirement that CCC employees provide that information, or the prevailing practice of making it available for public inspection and copying.  N.J. Stat. Ann. 47:1A-1, *et seq*.  It should be noted that federal courts have upheld the constitutionality of numerous state statutes requiring the disclosure of personal financial information for the purpose of preventing conflicts of interest.  *See e.g. Bertoldi v. Wachtler*, 952 F.2d 656, 660 (2d Cir. 1991) (holding that financial disclosure laws advance the substantial state interest in "reducing the risk of corruption and conflict of interest in the discharge of important public and quasi-public responsibilities in order to enhance the public confidence in the integrity of government"); *Igneri v. Moore*, 898 F.2d 870, 877 (2d Cir. 1990) ("financial disclosure statutes 'reflect the not unreasonable judgment of many legislatures that disclosure will help reveal and deter corruption and conflicts of interest'") (citations omitted); *Plante v. Gonzalez*, 575 F.2d 1119, 1136 (5th Cir. 1978) ("[w]e join the majority of courts considering the matter and conclude that mandatory financial disclosure for elected officials is constitutional"); *O'Brien v. DiGrazia*, 544 F.2d 543,

545-46 (1st Cir. 1976), *cert. denied*, 431 U.S. 914 (1977) ("[p]rivacy in the sense of freedom to withhold personal financial information from the government or the public has received little constitutional protection").  The main question for the Court, therefore, is whether the new online publication requirement changes the constitutionality of the previous financial disclosure scheme.

### a.        Effect of Internet Publication on Constitutional Rights

The Third Circuit Court of Appeals recently addressed whether there are qualitative differences between online and more traditional methods of publication that might change otherwise permissible actions into unconstitutional ones.  In *A.A. v. New Jersey*, 341 F.3d 206 (3d Cir. 2003), the New Jersey legislature statutorily created an Internet registry for posting personal information about convicted sex offenders.  *A.A.*, 341 F.3d at 208.  The provision "authoriz[ed] the creation of an internet registry which supplements the existing registration and notification system and contains information about certain high and moderate risk sex offenders."  *Id.* at 209.  The plaintiffs sought to enjoin the defendants from implementing the Internet registry, claiming that it violated their constitutional right to privacy through the online dissemination of their home addresses and the online compilation of their physical descriptions.  *Id.*

The Court of Appeals rejected both arguments.  In its reasoning, the court suggested that the online publication of information that is already publicly available, by that fact alone, would not make otherwise permissible conduct unconstitutional.  With respect to the plaintiffs' home addresses, the Court of Appeals acknowledged that "the [Internet registry] entails notification of a different dimension [than other schemes,]" but found that the "analytic approach here is the same."  *Id.* at 211.  The question was whether the information was entitled to protection, and if so, whether the government's interest in disclosing it outweighed that interest.  *Id.* at 211-12.  The court observed that the earlier registry system had been upheld as constitutional, and described the issue before it as simply "whether the addition of the [Internet registry] over Megan's Law's original notification scheme tips the balance back in favor of [the registrants]."

*Id.* at 212.

The court held that the online publication of home addresses would not change the constitutional nature of the registry system. It noted the benefits of implementing an Internet registry, describing it as a "'more efficient, cost effective, and convenient' avenue to provide [the State's] citizens with needed information." *Id.* at 213. The court rejected the plaintiffs' argument against online publication because the plaintiffs "ignore[d] . . . the need to access information in a mobile society . . . ." *Id.* at 212.

With respect to the plaintiffs' other personal information, the court rejected their argument that "when the State gathers in one place information that is otherwise public – yet scattered – the compiled unit becomes entitled to a constitutional right to privacy." *Id.* at 214. According to the Court of Appeals, "[w]e have never recognized such a privacy right, the District Court rejected it, and the [registrants] have not provided us with a persuasive reason to do so now." *Id.*

In discussing the effects of posting information on the Internet, the Court of Appeals cited *Smith v. Doe*, 538 U.S. 84 (2003), in which the Supreme Court also addressed the effect of having an online registry for sex offenders. According to the Supreme Court, "[a]n individual seeking the information must take the initial step of going to the [website], proceed to the sex offender registry, and then look up the desired information." *Smith*, 538 U.S. at 99. The Court compared the Internet registry with "a visit to an official archive of criminal records[,]" suggesting that the Internet is not qualitatively different from more traditional methods of making information publicly available. *Id. See also Cox Broadcasting Corp. v. Cohn*, 420 U.S. 469, 494-95 (1975) ("the interests of privacy fade when the information involved already appears on the public record").

                **b.**     **Plaintiffs' Privacy Claims**

Plaintiffs' primary argument is that the online publication of the FDS information would

violate their constitutional right to privacy. The Third Circuit Court of Appeals has held that, in deciding whether disclosure of particular information violates an individual's right to privacy, a court "must engage in the delicate task of weighing competing interests." *Fraternal Order of Police, Lodge No. 5 v. City of Phila.*, 812 F.2d 105, 110 (3d Cir. 1987) (quoting *United States v. Westinghouse Elec. Corp.*, 638 F.2d 570, 578 (3d Cir. 1980)). According to the court:

> The factors which should be considered in deciding whether an intrusion into an individual's privacy is justified are the type of record requested, the information it does or might contain, the potential for harm in any subsequent nonconsensual disclosure, the injury from disclosure to the relationship in which the record was generated, the adequacy of the safeguards to prevent unauthorized disclosure, the degree of need for access, and whether there is an express statutory mandate, articulated public policy, or other recognizable public interest militating towards access.

*Fraternal Order of Police*, 812 F.2d at 110 (quoting *Westinghouse*, 638 F.2d at 578).

Plaintiffs rely heavily on *Fraternal Order of Police* in arguing that the information contained in their FDS forms should not be published on the Internet. That case, however, should be distinguished in several respects.

First, the case concerned the disclosure of personal information that was not already available to either the defendants or the public – the defendants in that case were soliciting the information for the first time. *See id.* at 107-08. In contrast, the FDS information that Plaintiffs seek to protect in this case is already publicly available, and Plaintiffs do not challenge the constitutionality of the public availability of that information.

Second, in *Fraternal Order of Police*, the information at issue would be seen only by "those few members of the Department requiring access to the information[,]" and either "be returned to the applicants or destroyed" after its use. *Id.* at 118. It therefore did not concern the particular governmental interest implicated in this case, namely, the disclosure of conflicts information to the general public. During oral argument, Plaintiffs acknowledged the distinction between the interests implicated in *Fraternal Order of Police* and those at issue here.

To the extent that Plaintiffs' reliance on *Fraternal Order of Police* is warranted, in applying the balancing test described in that case, Plaintiffs fail to demonstrate a likelihood of

success with respect to their privacy claims. The State has a substantial interest in deterring corruption and conflicts of interest among its employees by requiring the disclosure of their financial information. *See e.g. id.* at 116 (holding that there is a "strong public interest in avoiding corruption among officers assigned to a unit designed to perform investigations in areas traditionally susceptible to corruption"); *Barry v. City of New York*, 712 F.2d 1554, 1560 (2d Cir. 1983) (holding that "the statute as a whole plainly furthers a substantial, possibly even a compelling, state interest" because its purpose is "to deter corruption and conflicts of interest among City officers and employees, and to enhance public confidence in the integrity of its government").

      Plaintiffs are employees with the Casino Control Commission, and as such, are susceptible to the dangers of corruption, both as public employees and as ones working in the gambling industry specifically. The New Jersey legislature has stated that "[a]n integral and essential element of the regulation and control of [casino facilities] by the State rests in the public confidence and trust in the credibility and integrity of the regulatory process and of casino operations." N.J. Stat. Ann. 5:12-1(b)(6). The Casino Control Act requires that CCC employees file FDS forms annually with the Ethics Commission in order to preserve that public confidence. N.J. Stat. Ann. 5:12-58(e).

      The new rule for posting FDS information online was enacted with these same purposes in mind. The legislature adopted the rule as an amendment to the Conflicts of Interest Law, N.J. Stat. Ann. 52:13D-12, *et seq.*, the purpose of which law is "[t]o ensure propriety and preserve public confidence . . . ." N.J. Stat. Ann. 52:13D-12(b). In Governor Corzine's executive order to enforce the new online publication rule, he states that "public disclosure of the personal financial interests of public officials serves to maintain the public's faith and confidence in its governmental representatives and guards against conduct violative of the public trust . . . ." (Wood Decl. Ex. A.) The order further states that "the current financial disclosure process must be strengthened to ensure that financial disclosure requirements are applied to members of all

State government boards, commissions, and other bodies that perform important governmental functions in areas such as regulation, policy-making, and the expenditure of public funds . . . ." (*Id.*)

Plaintiffs appear unlikely to succeed in showing that their privacy interests in the FDS information outweigh these substantial public interests. They do not argue that the public availability of their FDS information was unconstitutional before the online publication rule was implemented. In posting the FDS information online, no additional data would be provided beyond what was already available to the public. Instead, the website would provide *less* information than what was previously available. The website states that the FDS forms "have been edited, to the extent possible, to remove personal information that is not releasable to the public and is not required" by executive order. (Strmensky Decl. ¶6, Ex. A.) Ethics Commission personnel review all FDS information prior to their posting to redact certain personal identifying information, including social security numbers, account numbers and home addresses. (*Id.* ¶7.)

The Court also notes that financial disclosure statements are currently available online for a number of other states, including Alabama, Georgia, Connecticut, Hawaii, Iowa, Indiana, Louisiana, Michigan, Delaware, New Hampshire, New Mexico, Ohio, Pennsylvania and South Dakota. (Strmensky Decl. ¶4.) Plaintiffs have not identified any cases holding that the practices in these states are unconstitutional.

        **c.**    **Plaintiffs' Free Association Claims**

Plaintiffs also argue that the new online publication rule will deter CCC employees from marrying potential spouses and thereby violate their First Amendment right to free association. In support of that argument, Plaintiffs cite *Roberts v. United States Jaycees*, 468 U.S. 609 (1984), and *Fraternal Order of Police*, 812 F.2d 105. Both cases should be distinguished.

In *Roberts*, the Supreme Court denied the plaintiff the First Amendment protection that it sought. Although the Supreme Court found that family relationships with "such attributes as

9

relative smallness, a high degree of selectivity in decisions to begin and maintain the affiliation, and seclusion from others" may be entitled to First Amendment protection, it held that the plaintiff organization did not enjoy such protection because it consisted of "large and basically unselective groups." *Roberts*, 468 U.S. at 619-21.

In *Fraternal Order of Police*, the Third Circuit Court of Appeals ordered the district court to enjoin the use of a certain question requiring police officers to disclose their memberships in broad categories of organizations. *Fraternal Order of Police*, 812 F.2d at 120. The court, however, found that the question violated the officers' rights to free association, not with their spouses, but with their respective organizations. *See id.* at 119-20. Here, Plaintiffs argue that the online publication rule will deter their marital associations, not their membership in their disclosed organizations. The free association portion of *Fraternal Order of Police* therefore does not apply to the facts of this case.

Plaintiffs have not provided any legal support showing that the online publication of FDS information would violate their right to marital association. They have therefore failed to show a likelihood of success with respect to their First Amendment claim.

### d. Plaintiffs' Deprivation of Property Right Claims

Plaintiffs also argue that the online publication rule would deter employment with the CCC and thereby unlawfully deprive Plaintiffs of their property right to employment. In support of their argument, Plaintiffs cite only to *Board of Regents of State Colleges v. Roth*, 408 U.S. 564 (1972). The *Roth* court held, however, on the facts of that case, that the employee did not have a property right to his job. According to the Court, "all that clearly appears is that the respondent was not rehired for one year at one university" and that "[i]t stretches the concept too far to suggest that a person is deprived of 'liberty' when he simply is not hired in one job but remains as free as before to seek another." *Roth*, 408 U.S. at 575. Even if Plaintiffs are correct that the new online publication rule will deter people from seeking employment with the CCC, such circumstances alone would not result in a constitutional violation. *See Plante*, 575 F.2d at 1126

("mere deterrence [from seeking elected office] is not sufficient for a successful constitutional attack").  Plaintiffs therefore also fail to demonstrate a likelihood of success with respect to their claim of deprivation of a property right without due process.

### 2. Extent to Which Plaintiffs Will Suffer Irreparable Harm Without Injunctive Relief

The Third Circuit Court of Appeals has instructed that "'[t]he dramatic and drastic power of injunctive force may be unleashed only against conditions generating a presently existing actual threat.'"  *Adams v. Freedom Forge Corp.*, 204 F.3d 475, 487 (3d Cir. 2000) (quoting *Holiday Inns of Am., Inc. v. B&B Corp.*, 409 F.2d 614, 618 (3d Cir. 1969)).  The court has also "insisted that the risk of irreparable harm must not be speculative." *Adams*, 204 F.3d at 488.

Plaintiffs fail to demonstrate that they face an actual threat sufficient for a finding of irreparable harm.  The information that would be published online is already available to the public.  Moreover, several safeguards would prevent the public dissemination of especially sensitive information, including social security numbers, account numbers and home addresses.  Plaintiffs have offered no evidence showing that they will suffer actual harm resulting from the online availability of the already-public FDS information, and their fears remain speculative.

### III. CONCLUSION

For these reasons, the Court finds that Plaintiffs fail to demonstrate either a likelihood of success on the merits or irreparable harm.  Plaintiffs' motion is therefore denied.

Dated:  April 19, 2006

                                                      s/ Garrett E. Brown, Jr.
                                                      GARRETT E. BROWN, JR., U.S.D.J.