<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| EDWARD W. PRICE, VERONICA PRICE, TERESA G. AMBROSE, JOHN K. BALTZ, MICHAEL CLAY, STEPHANIE FALDETTA, ANDREW LEE, JAMES J. LUSHOK, JR., JAMES McCLORY, LISA PASTORE, DAVID SMITH, MARGARET WESCOTT, and MICHAEL YOUNG,<br><br>    Plaintiffs,<br><br>    v.<br><br>GOVERNOR JON S. CORZINE, individually and as GOVERNOR OF THE STATE OF NEW JERSEY, STATE OF NEW JERSEY, NEW JERSEY STATE ETHICS COMMISSION, and RITA L. STRMENSKY, individually and as EXECUTIVE DIRECTOR OF STATE ETHICS COMMISSION,<br><br>    Defendants. | Civ. No. 06-1520 (GEB)<br><br>**MEMORANDUM OPINION** |

<u>**BROWN, Chief Judge**</u>

This matter comes before the Court upon Defendants' motion to dismiss and the American Civil Liberties Union of New Jersey's ("ACLU-NJ") motion for leave to participate as *amicus curiae*. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331. The Court, having considered the parties' submissions and decided the matter without oral argument pursuant to Federal Rules of Civil Procedure Rule 78, and for the reasons set forth below, will: (1) grant Defendants' motion to dismiss; and (2) deny the ACLU-NJ's motion for leave to participate as *amicus curiae*.

**I.    BACKGROUND**

The Court provided a detailed background to this case in its denial of Plaintiffs' motion

1

for a preliminary injunction.  *Price v. Corzine*, 2006 WL 1080491, at *1-2 (D.N.J. April 20, 2006).  Rather than repeat that description here, the Court will provide a brief summary of the relevant facts of this case and the developments following that decision.

Plaintiffs are employees of the New Jersey Casino Control Commission ("CCC") or spouses of such employees.  (Compl. ¶¶3, 8.)  The Casino Control Act requires that employees of the CCC file an annual Financial Disclosure Statement ("FDS") with the New Jersey State Ethics Commission ("Ethics Commission").  N.J. Stat. Ann. 5:12-58(e).  The FDSs require employees to list "all assets and liabilities, property and business interests, and sources of income of said employee or agent and his spouse."  *Id.*  Employees are required to complete such statements "under oath" and to file them "at the time of employment and annually thereafter."  *Id.*  Plaintiffs claim that those FDSs "are accessible to the public."  (Compl. ¶9.)

New Jersey's Conflicts of Interest Law was recently amended to require that these same FDSs be posted on the Internet.  The new rule, effective on March 15, 2006, provides that "[f]inancial disclosure statements required to be submitted to the [Ethics Commission] by law, regulation or executive order shall be made available to the public, promptly after receipt, on the Internet site of the [Ethics Commission], commencing with submissions for 2005."  N.J. Stat. Ann. 52:13D-21(n).  To advance the purposes of the Conflicts of Interest Law, Governor Corzine issued an executive order referencing that section of the law requiring the online publication of FDSs.  (Compl. ¶12.)  Pursuant to the new online publication rule and Governor Corzine's executive order, the Ethics Commission began posting FDS information on its website in the form of a searchable database.  (*See* Compl. ¶14.)

On March 31, 2006, Plaintiffs filed the complaint in this case against Defendants pursuant to 42 U.S.C. § 1983.  Plaintiffs allege that the Ethics Commission's online publication of their FDS information violates a number of their federal constitutional rights.  On the same date, Plaintiffs filed a motion seeking a temporary restraining order and a preliminary injunction.  After Defendants informed the Court that they would refrain from posting FDS information

concerning the named Plaintiffs for a period of sixty days, the Court denied Plaintiffs' motion for a temporary restraining order as moot. On April 18, 2006, the Court heard oral argument concerning Plaintiffs' motion for a preliminary injunction. The Court denied Plaintiffs' motion on April 20, 2006.

On May 16, 2006, Defendants filed a motion to dismiss the Complaint. On June 1, 2006, the American Civil Liberties Union of New Jersey ("ACLU-NJ") filed a motion for leave to appear as *amicus curiae* on the matter. Briefing for both motions having been completed, the Court will now address those motions.

II. DISCUSSION

    A. The ACLU-NJ's Motion

        1. Standard for Motions for Leave to Participate as *Amicus Curiae*

District courts have the inherent authority to appoint *amicus curiae* to assist in their proceedings. *See*, *e.g.*, *Liberty Resources, Inc. v. Phila. Hous. Auth.*, 395 F. Supp. 2d 206, 209 (E.D. Pa. 2005); *Avellino v. Herron*, 991 F. Supp. 730, 732 (E.D. Pa. 1998); *Liberty Lincoln Mercury, Inc. v. Ford Marketing Corp.*, 149 F.R.D. 65, 82 (D.N.J. 1993). The extent to which a district court should permit an *amicus curiae* is solely within the court's discretion. *Waste Management of Pa., Inc. v. City of York*, 162 F.R.D. 34, 36 (M.D. Pa. 1995) (citations omitted).

An *amicus curiae* is not a party to the litigation, but rather assists the court in its understanding of a particular matter in a case. *Id.* The Third Circuit Court of Appeals has noted that "permitting persons to appear . . . as friends of the court . . . may be advisable where third parties can contribute to the court's understanding" of the matter in question. *See Harris v. Pernsley*, 820 F.2d 592, 603 (3d Cir. 1987). At the trial level, where issues of fact as well as law predominate, the aid of *amicus curiae* may be less appropriate than at the appellate level, where such participation has become standard procedure. *U.S. v. Alkaabi*, 223 F. Supp. 2d 583, 592 n.16 (D.N.J. 2002) (citing *Yip v. Pagano*, 606 F. Supp. 1566, 1568 (D.N.J. 1985)); *Liberty*

*Lincoln Mercury*, 149 F.R.D. at 82 (same).

Generally, a district court grants *amicus curiae* status where: (1) the petitioner has a special interest in the case; (2) the petitioner's interest is not represented competently or at all in the case; (3) the proffered information is timely and useful; and (4) the petitioner is not partial to a particular outcome in the case. *See Liberty Resources*, 395 F. Supp. 2d at 209 (citing *Sciotto v. Marple Newtown Sch. Dist.*, 70 F. Supp. 2d 553, 555 (E.D. Pa. 1999)); *Alkaabi*, 223 F. Supp. 2d at 592 (same).

### 2. Whether the ACLU-NJ Should Be Granted *Amicus Curiae* Status

The ACLU-NJ argues that it should be granted *amicus curiae* status because of its extensive litigation experience in supporting "open government and the right to privacy." (ACLU-NJ's Br. at 2.) It argues that "[t]he participation of *amicus curiae* [would] assist this Court in the resolution of the issues of public importance raised by this case by providing the legal context . . . in which to analyze the facts of this case." (*Id.* at 3.)

While the Court recognizes the ACLU-NJ's history of involvement in privacy cases, it appears that its participation would be unnecessary in this case, for two reasons.

First, its participation would not be useful to the Court in evaluating Defendants' motion. To decide a motion to dismiss, the Court must accept the plaintiff's factual allegations as true. The ACLU-NJ, in contrast, characterizes this case in a manner that runs directly contrary to both Plaintiffs' allegations and their argument against Defendants' motion to dismiss. In its proposed *amicus* brief in opposition to Defendants' motion, the ACLU-NJ claims that FDS information was *not* publicly available before the statutory amendment and executive order that Plaintiffs challenge in this case. (ACLU-NJ's Proposed Br. at 6.) It also claims that "[i]f the statements were made public in practice, it was not pursuant to valid authority." (*Id.* at 6 n.1.) According to the ACLU-NJ:

> The question presented to the court is therefore not whether information properly and constitutionally available to the public should simply be made more readily

> accessible via the Internet.  Indeed, were that the question, *amicus* would side with Defendants – as *amicus* supports making public information as accessible to the public as possible.  However, instead, the question is whether the government's public disclosure of the [FDSs] – be it via the Internet or through other means – is constitutionally permissible in the first instance.

(*Id.* at 9.)

That, however, is not what Plaintiffs allege in the Complaint.  Plaintiffs claim instead that "[p]rior to the new [statutory amendment] being enacted, the FDSs remained in possession of the Defendant Ethics Commission, and/or the CCC, *although they are accessible to the public*."  (Compl. ¶9 (emphasis added).)  Taking Plaintiffs' allegations as true, the Court must assume that the FDSs were, in practice, made available to the public.

Moreover, Plaintiffs have not alleged that they were injured under that previous disclosure system.  They allege injury only insofar as that already-public information is published on the Internet.  (*See* Compl. ¶¶15-19.)  In their brief opposing Defendants' motion, Plaintiffs continue to make these same allegations – that the FDSs were already publicly available, and that Plaintiffs suffer injury only when that information is made available online.  (*See* Pls.' Br. at 4.)  The ACLU-NJ's brief, based as it is on factual allegations that contradict those in the Complaint, would not be useful to the Court in deciding Defendant's motion.

The ACLU-NJ's assistance would also be unnecessary because Plaintiffs are adequately represented by competent counsel.  That is apparent from their attorney's work thus far in drafting the Complaint, filing papers in support of their earlier motion for preliminary injunction, engaging in oral argument in support of that motion, and opposing Defendants' current motion to dismiss.  For these reasons, the ACLU-NJ's motion is denied.

### B. Defendants' Motion to Dismiss

#### 1. Standard of Review for Motions to Dismiss

In considering a Rule 12(b)(6) motion to dismiss, a court "must accept all well pleaded allegations in the complaint as true and view them in the light most favorable to plaintiff."

*Angelastro v. Prudential-Bache Sec., Inc.*, 764 F.2d 939, 944 (3d Cir.), *cert. denied*, 474 U.S. 935 (1985).  *See also Langford v. City of Atl. City*, 235 F.3d 845, 847 (3d Cir. 2000); *Oran v. Stafford*, 226 F.3d 275, 279 (3d Cir. 2000).  The court may dismiss a complaint only if the plaintiff can prove no set of facts that would entitle him to relief.  *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).  *See also Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts Inc.*, 140 F.3d 478, 483 (3d Cir. 1998); *Ford v. Schering-Plough Corp.*, 145 F.3d 601, 604 (3d Cir. 1998), *cert. denied*, 525 U.S. 1093 (1999).

      **2.**      **Whether Defendants' Motion to Dismiss Plaintiffs' Claims Should be Granted**

          **a.**      **Plaintiffs' Privacy Claim**

                **(1)**      **The Applicable Law Concerning the Right to Privacy**

Plaintiffs claim that the statute and executive order in question violate their constitutional right to privacy.  "The United States Constitution does not mention an explicit right to privacy and the United States Supreme Court has never proclaimed that such a generalized right exists." *C.N. v. Ridgewood Bd. of Educ.*, 430 F.3d 159, 178 (3d Cir. 2005).  "The Supreme Court has, however, found certain 'zones of privacy' in the amendments to the Constitution . . . ." *Id.* (citing *Roe v. Wade*, 410 U.S. 113, 152-53 (1973)).  "[F]rom these zones [the Supreme Court] has specified that the constitutional right to privacy 'protects two types of privacy interests . . . .'" *Id.*  "'One is the individual interest in avoiding disclosure of personal matters, and another is the interest in independence in making certain kinds of important decisions.'" *Fraternal Order of Police, Lodge No. 5 v. City of Phila.*, 812 F.2d 105, 109 (3d Cir. 1987) (quoting *Whalen v. Roe*, 429 U.S. 589, 599-600 (1977)).  Plaintiffs' claim is based on the first type of interest – avoiding disclosure of personal matters.

The Third Circuit Court of Appeals "[has] previously explained that there is no absolute protection against disclosure." *Fraternal Order of Police*, 812 F.2d at 110.  "Disclosure may be

required if the government interest in disclosure outweighs the individual's privacy interest." *Id.* (citing *Trade Waste Management Ass'n, Inc. v. Hughey*, 780 F.2d 221, 234 (3d Cir. 1985); *U.S. v. Westinghouse Elec. Corp.*, 638 F.2d 570, 577 (3d Cir. 1980)). "In determining whether information is entitled to privacy protection, [the Third Circuit Court of Appeals] ha[s] looked at whether it is within an individual's reasonable expectations of confidentiality." *Fraternal Order of Police*, 812 F.2d at 112. "The more intimate or personal the information, the more justified is the expectation that it will not be subject to public scrutiny." *Id.* at 112-13.

To determine whether a particular intrusion into an individual's privacy is justified, "[a court] must engage in the delicate task of weighing competing interests." *See id.* at 110 (citing *Westinghouse*, 638 F.2d at 578). Factors that the court should consider include: (1) the type of record requested; (2) the information it does or might contain; (3) the potential for harm in any subsequent nonconsensual disclosure; (4) the injury from disclosure to the relationship in which the record was generated; (5) the adequacy of safeguards to prevent unauthorized disclosure; (6) the degree of need for access; and (7) whether there is an express statutory mandate, articulated public policy, or other recognizable public interest militating toward access. *Id.* (citing *Westinghouse*, 638 F.2d at 578).

### (2) Whether Plaintiffs Have Stated a Claim Upon Which Relief Can Be Granted

Plaintiffs do not challenge the constitutionality of the previous system of making FDSs publicly available in paper form. They claim instead that the online publication of that information tips the constitutional balance towards unconstitutionality because the new practice implicates the competing interests differently.

First, Plaintiffs claim that posting the FDSs on the Internet involves a greater privacy interest than the previous disclosure system. According to Plaintiffs, they "will be put at risk" as a result of the ease of access of that information online. (*See* Compl. ¶¶17-19.) Plaintiffs allege that they will be injured because "[their] private financial information [will] be available to the

free and open world of the internet." (*Id.* ¶17.)  Second, they claim that, compared to the previous system, publishing the FDS information online will be less successful in achieving the State's interest in deterring conflicts of interest and corruption because it permits individuals outside of New Jersey to access that information.  (*See id.* ¶19.)

These allegations are insufficient to support Plaintiffs' privacy claim.  To prove that the new disclosure system is unconstitutional, Plaintiffs would have to show that the differences between the previous system and the new one are of constitutional magnitude.  The only difference they allege, however, is that the new disclosure system will "put [them] at risk" by placing that information in the "free and open world of the internet" because "anyone that can operate a computer and explore the internet" can then access that information.  (*See* Compl. ¶¶17, 19.)  They have not alleged any further facts in support of their claim.

For example, there are no allegations that the online system involves the disclosure of any more information than the previous disclosure system, or that the safeguards protecting Plaintiffs' privacy are any less effective than those of the earlier system.  Nor are there allegations that the former disclosure system is as effective in achieving the State's interest – informing the public of conflicts of interest and deterring corruption – as posting the FDS information online.  *See Fraternal Order of Police*, 812 F.2d at 110 (observing that a court evaluating a privacy claim should consider "the potential for harm in any subsequent nonconsensual disclosure," "the adequacy of safeguards to prevent unauthorized disclosure," "the degree of need for access," as well as other facts) (citing *Westinghouse*, 638 F.2d at 578).

Plaintiffs privacy claim rests on one assertion – that the online publication of FDS information, already publicly available under a disclosure system that Plaintiffs do not challenge, is unconstitutional by that fact alone.  As this Court explained in denying Plaintiffs' motion for a preliminary injunction, the Third Circuit Court of Appeals has suggested that the online publication of already-public information, by that fact alone, would not make otherwise permissible conduct unconstitutional.  *See Price v. Corzine*, 2006 WL 1080491, at *3 (discussing

*A.A. v. New Jersey*, 341 F.3d 206 (3d Cir. 2003)).

The Court notes that, in evaluating a privacy claim, a court must engage in "the delicate task of weighing competing interests." *Fraternal Order of Police*, 812 F.2d at 110 (citing *Westinghouse*, 638 F.2d at 578). But where the plaintiff has failed to allege facts that would support such a claim, as is the case here, the court should dismiss the claim. *See O'Brien v. DiGrazia*, 544 F.2d 543, 545-46 (1st Cir. 1976), *cert. denied sub nom.*, *O'Brien v. Jordan*, 431 U.S. 914 (1977) (affirming dismissal of privacy claim challenging the mandatory disclosure of financial information for police officers); *Plante v. Gonzalez*, 575 F.2d 1119, 1136 (5th Cir. 1978), *cert. denied*, 439 U.S. 1129 (1979) (affirming dismissal of privacy claim challenging certain financial disclosure requirements for elected state officials because "mandatory financial disclosure for elected officials is constitutional").

Based on their current allegations, the Court finds it appropriate to dismiss Plaintiffs' privacy claim. The Court will dismiss the claim without prejudice, however, and grant Plaintiffs thirty days to amend the Complaint to cure the deficiencies described above. Those deficiencies include Plaintiffs' failure to allege facts addressing the factors set forth in *Westinghouse*, 638 F.2d 570, and the differences between the online publication of FDSs and the previous financial disclosure system.

### b. Plaintiffs' Freedom of Association Claim

Plaintiffs also claim that the new online publication rule will deter CCC employees from marrying potential spouses and thereby violate their First Amendment right to free association. (Compl. ¶21.) According to Plaintiffs, "[t]he disputed statute requires the spouses of CCC . . . employees to disclose their personal financial information to the public unrestricted by the [Open Public Records Act] and through the Internet." (Pls.' Br. at 15.) They claim that a potential spouse of such an employee would thus have to choose between two fundamental rights – the right to marry and the right to privacy. (*Id.* at 15-16.)

That argument fails, however, for two reasons. First, the online posting of FDS information that is already available to the public through permissible means would not violate Plaintiffs' right to privacy, for reasons already discussed. Second, the challenged law does not implicate Plaintiffs' right to marry. In asserting that right, Plaintiffs cite *Loving v. Virginia*, 388 U.S. 1 (1967), and *Skinner v. Oklahoma ex rel. Williamson*, 316 U.S. 535 (1942). Both cases should be distinguished.

In *Loving*, the Supreme Court evaluated the constitutionality of a state statutory scheme that prohibited certain categories of interracial marriage. *Loving*, 388 U.S. at 2-3. The Court found that "[t]o deny this fundamental freedom [of marriage] on so unsupportable a basis as the racial classifications embodied in these statutes, classifications so directly subversive of the principle of equality at the heart of the Fourteenth Amendment, is surely to deprive all the State's citizens of liberty without due process of law." *Id.* at 12.

In *Skinner*, the Supreme Court addressed whether a state statute that required certain criminals to be sterilized was constitutional. *Skinner*, 316 U.S. at 536. There, the Court stated that "[m]arriage and procreation are fundamental to the very existence and survival of the race." *Id.* at 541. "The power to sterilize, if exercised, may have subtle, farreaching and devastating effects." *Id.*

Both *Loving* and *Skinner* involved state laws that directly prohibited, either legally or in fact, certain individuals from exercising their right to marry or their right to procreate. In both cases, the challenged law differentiated individuals based on invidious classifications. *See Skinner*, 316 U.S. at 541 ("Sterilization of those who have thrice committed grand larceny with immunity for those who are embezzlers is a clear, pointed, unmistakable discrimination").

Here, Plaintiffs challenge a law that would advance the important state interest of deterring conflicts of interest and corruption. The classification of CCC employees and their spouses is based on nondiscriminatory distinctions. The challenged law, moreover, does nothing to prohibit CCC employees or their prospective spouses from marrying each other. Plaintiffs

10

have therefore failed to state a claim that the online posting of FDS information would violate either their right to freedom of association or their right to marry.

### c. Plaintiffs' Deprivation of Property Right Claim

Plaintiffs assert that the online publication of FDSs deters employment with the CCC and thereby unlawfully deprives Plaintiffs of their property right to employment. (Compl. ¶21.) Defendants argue that such deterrence, without more, does not constitute an unconstitutional deprivation of property. (Defs.' Br. at 14.) The Court agrees with Defendants.

In *Plante v. Gonzalez*, the Fifth Circuit Court of Appeals addressed a similar question. The case concerned an amendment to the Florida state constitution that required certain elected officials to make detailed information about their personal finances available to the public. *Plante*, 575 F.2d at 1121. A number of state senators who were subject to the financial disclosure requirements challenged the constitutionality of the amendment. *Id.* at 1121-22. The district court found that the plaintiffs were not entitled to the protection that they sought and dismissed their complaint. *Id.* at 1123.

In evaluating the plaintiffs' claims, the Fifth Circuit Court of Appeals considered an argument by *amicus* that "the amendment unconstitutionally burdens the right to run for office." *Id.* at 1126. According to *amicus*, "[i]f the amendment is upheld, the appellants say they will resign" and "[o]ther candidates will be deterred from running." *Id.* The Court of Appeals rejected that argument, observing that while "[d]isclosure requirements may deter some people from seeking office[,]" "mere deterrence is not sufficient for a successful constitutional attack." *Id.* (citing *Bullock v. Carter*, 405 U.S. 134, 142-43 (1972)). The court explained that if it found such deterrence to be enough to make the amendment unconstitutional, other unattractive features of a job, such as "official salary levels or the location of the capital city[,] might furnish the basis for a constitutional attack." *See id.*

Here, Plaintiffs make the same type of argument that was made in *Plante*. According to

Plaintiffs, the financial disclosure law makes working for the CCC unattractive, and therefore deprives current and prospective employees of their right to employment.  (*See* Compl. ¶21.)  For the same reasons provided in *Plante*, the Court finds that Plaintiffs' allegations are insufficient to state a constitutional claim.

### III.  CONCLUSION

For these reasons, the Court finds that the ACLU-NJ should not be granted leave to appear as *amicus curiae*, and that Plaintiffs have failed to state a claim upon which relief can be granted.  The Court will dismiss with prejudice Plaintiffs' freedom of association and deprivation of property right claims.  The Court will dismiss without prejudice Plaintiffs' privacy claim, and grant Plaintiffs thirty (30) days to amend the Complaint with respect to that claim.

Dated:   August 7, 2006

                                               s/ Garrett E. Brown, Jr.
                                               GARRETT E. BROWN, JR., U.S.D.J.